**CLARK, Plaintiff, v. DeWALT and SATTIG, Defendants.**

Common Pleas Court, Huron County.

No. 23560.   Decided April 10, 1953.

Levin & Levin, Lorain, for plaintiff.
Freeman & Freeman, Norwalk, for defendants.

194

## OPINION

By YOUNG, Jr., J.

This action is one for assault and battery commenced by the plaintiff December 28, 1951. The petition alleged merely that on Jan. 1, 1951, while the plaintiff and defendants were standing in the police station in Norwalk, Ohio, the defendants assaulted and beat plaintiff by striking him in the face several times with their fists, inflicting severe injuries which were enumerated.

The defendants filed a joint answer in the form of a general denial, but alleging as a second defense an arrest of the plaintiff by the defendants, his resistance to the arrest, and that plaintiff was injured when the defendants, using no more force than was reasonably necessary, overcame his resistance.

The plaintiff filed a motion to strike certain allegations from the answer. This motion was overruled, and plaintiff then demurred to the answer. The demurrer was overruled as to the first defense, and sustained as to the second defense.

The defendants then filed an amended joint answer, which again contained, in addition to a general denial, a second defense, alleging that the defendants were acting as policemen, and that the plaintiff was lawfully arrested and taken to the police station; that he refused to enter the jail cell therein, and that defendants, using no more force than was reasonably necessary, overcame his resistance and placed him in the cell, but plaintiff's intoxicated condition caused him to fall in the cell and injure himself.

The plaintiff filed an elaborate motion to strike parts of the amended answer, or in the alternative to make the answer definite and certain, which was overruled. The plaintiff thereupon demurred to the amended joint answer, and the demurrer was overruled.

The plaintiff finally replied to the amended joint answer denying the allegations thereof, and pleading further that the plaintiff had been acquitted and discharged by the Court of Appeals from the alleged offense for which the defendants placed him under arrest on January 1, 1951, and that the defendants had no right to arrest him without a warrant, as they did not find him committing the offense alleged, and the offense was not a felony.

Thereafter the case went to trial before a jury. The trial consumed parts of five days, and at its conclusion the jury deliberated for nearly nine hours before returning a verdict in favor of the defendants.

Promptly after the return of the verdict the plaintiff filed a motion for judgment notwithstanding the verdict. It is this motion that is being ruled upon in this opinion.

These preliminary matters are set forth in detail because they show the essence of the dispute as to strictly legal matters which goes through all of the proceedings in the matter. The plaintiff has contended throughout the entire proceedings that there is only a single legal and factual dispute involved, namely, did the defendants strike the plaintiff in the manner which plaintiff claims they did, or did they not. Based upon this contention, plaintiff sought to strike out any pleadings and exclude any evidence which attempted to assert that he received his injuries in a manner other than by being struck in the face by defendants' fists.

It is obvious that by this motion for judgment notwithstanding the verdict plaintiff is still taking the position that no evidence or pleadings except his can be considered. This motion is filed under the provisions of §11601 GC. The Supreme Court has held that such a motion is analogous to a motion for a directed verdict, in that if there is no defect in the pleadings, the evidence must be considered in the light most favorable to the opposing party, and then "must be such that reasonable minds could not reach different conclusions therefrom." **Wilkeson, Admr., v. Erskine & Son Inc., 145 Oh St 218 at 230.**

"Ordinarily, in order to sustain a motion for judgment notwithstanding a general verdict, the evidence received upon the trial and the facts established by admissions in the pleadings and in the record must be such that the court would have been required, upon a proper motion therefor, to direct a verdict for the party seeking such judgment. * * * In passing upon such a motion, neither the trial court, the Court of Appeals nor this court may weigh the evidence. Sec. 11601 GC." **McNees v. The Cincinnati Street Ry. Co., 152 Oh St 269, Syllabus 2.**

The pleadings have already been alluded to in some detail. The petition alleges an assault and battery resulting in certain injuries. The amended answer denies the allegations of the petition, and in addition to the general denial sets up an affirmative defense. This is traversed by a reply. It is therefore clear that so far as the pleadings are concerned, the motion is not well taken.

When the evidence is considered, there is again a marked difference between that of the plaintiff and that of the defendants.

The plaintiff testified that on the day in question, he came to Norwalk from his home in Lorain about noon. He stopped in several drinking places and drank, and then went to his mother's home, where he stayed a short time. He then came down town, had some more drinks, and went to a drug store and had a milk shake. He felt no effects from his drinking except a little glow. He then went looking for a friend, and while so engaged was accosted by the defendant DeWalt, who stepped out of a police cruiser and, without saying anything, motioned him to get into the police car. They went to the police station without conversation, and after they were inside, the defendant DeWalt made a vulgar remark and gesture, and then struck plaintiff several blows in the face. Plaintiff was dazed but did not fall. The defendant Sattig then came in back of him and held him by the upper arms, and DeWalt hit him two more blows. After this, defendants dragged the plaintiff who was in a dazed condition, into a cell, where he was locked up until the next morning. He requested several times that an Attorney be called, but this request was refused.

The plaintiff also testified at length concerning his injuries, and offered the testimony of a number of witnesses, none of whom, however, were present at the time of the alleged beating. Plaintiff offered the testimony of a dentist and a doctor as to his injuries and treatment, but neither of these witnesses was able to state unequivocally that the plaintiff could not have suffered the injuries he exhibited by falling against the bars and floor of the cell, or that the injuries could only have been caused by blows with a fist. The testimony of the doctor also indicated that the plaintiff's jaw was so weakened by the presence of an impacted tooth that it could have been broken by a lighter force than that required to break a normal jawbone.

The plaintiff called a bartender, who testified that he had served plaintiff liquor at two separate times during the afternoon, giving him a couple of drinks of liquor early in the afternoon, and not over three drinks late in the afternoon, and that when plaintiff left after the second visit he was not drunk. He also called two deputy sheriffs, who had seen him the morning after the alleged beating. One of them testified that plaintiff didn't appear as if he had been drunk the night before, and the other said he couldn't tell from plaintiff's appearance his condition the night before.

Over objections of the plaintiff, he testified on cross exam-

ination that when he was in the drug store after leaving the bar, he met a small colored boy named Phillip Oglesby. That he talked with the boy, asked if he knew one Frankie Noble, and paid for the boy's drink. He walked with the boy down Whittlesey, to Fruen Street, which is a considerable distance down Whittlesey Avenue from the drug store. On Fruen Street he grabbed the boy by the arm. The boy became frightened and said he had to go home, plaintiff said he wouldn't hurt him, but the boy ran away. Plaintiff then walked back to Whittlesey and down to Grand Avenue, looking for the Oglesby boy's house, and it was there the police car encountered him. The Oglesby boy and his father were there, and the boy pointed him out to the defendant DeWalt. The plaintiff tried to explain that he was looking for Frankie Noble.

The defendants, on the other hand, both denied that plaintiff was struck by anyone. The defendant DeWalt testified that in response to a call, he had gone to Oglesby's house. He took Phillip Oglesby and his father, Mason Oglesby, into the police car, and drove around for a while, and then returned. Plaintiff was there standing near Oglesby's house. They got out of the car, and Oglesby ran toward plaintiff saying, "I'll fix his clock." Defendant stopped Oglesby, saying "I'll take him to the judge." The plaintiff was drunk. Defendant and plaintiff rode to the police station and entered. Defendant Sattig was behind the desk. Plaintiff placed his arms on the desk, and responded to all questions by saying "You know me." Defendant Sattig then said "He's drunk." The defendant DeWalt replied, "We'll get the data tomorrow," and led plaintiff to the cell block and said "Get in." Plaintiff grabbed the two sides of the doorway and said "I'm not going in! You can't put me in!"

Hearing the uproar, the defendant Sattig came out. The defendants removed plaintiff's hands from the sides of the doorway, and pushed him into the cell. He went forward and bumped his head against the end of the cell, and then fell to the floor. The defendants then locked the cell door and went out into the other room of the police station, and did not return to the cell any more.

The defendants both denied that plaintiff had been struck or beaten. They testified that he was unsteady on his feet, thick of speech, and had the odor of alcohol on his breath. They denied that he asked to have an attorney called. They also denied knowing the plaintiff before the time of his arrest.

The boy Phillip Oglesby at the time of this trial was 13 years

old. He said that on the afternoon of Jan. 1, 1951, he had been to a show, and then went into the Rexall Drug Store, bought some comic books, and ordered a drink of hot chocolate. Plaintiff was sitting at the soda fountain and paid for the chocolate. Plaintiff asked the boy if he knew where Frankie Noble lived, and the boy said he did not. He left the drug store, and plaintiff followed him and spoke to him again outside. The boy then started to walk down Whittlesey Avenue toward his home, and plaintiff walked along beside him. It was then dark. Some distance down the street, the plaintiff said to the boy "I'm not the type that would cut your throat." The boy was somewhat frightened, and some distance farther on he turned off onto Fruen Street, and then started to cut between the houses on that street, when the plaintiff tried to put his hands on the boy's "privates" and put his other hand on the boy's shoulder. The boy testified "He grabbed between my legs." The boy then started to cry and ran away to his home, which was near. On cross examination the Oglesby boy testified that when they got on Fruen Street, the plaintiff didn't say "Don't go away, I'm trying to find Frankie Noble." He just asked him to walk further down the street and didn't say why. He also said that the plaintiff took hold of his trousers, and tried to hold him, but that he tried to shove plaintiff away and then ran across the fields to his home. He was badly scared, and told his father.

Mason Oblesby, the father, is a highly respectable resident of the Community. He testified that his son came into the house, appearing frightened, and with his pants opened. He then called the police, and went with the defendant DeWalt. After some time they saw a man standing near his house. He got out of the car, and discovered it was the plaintiff. He went to him and put his hands on him. DeWalt said "Let the judge take care of it." The plaintiff appeared to have been drinking, and to be in the "blackout stage." He was drunk. He staggered and said over and over that he was looking for Frankie Noble. This witness further testified that after plaintiff left with the defendant DeWalt, he went to the police station, arriving within five minutes after plaintiff and defendant got there, but he did not see the plaintiff there. The defendants said the plaintiff was in a cell.

The defendants also offered testimony tending to indicate that plaintiff had had considerably more to drink then plaintiff's evidence claimed. They also offered evidence that the plaintiff, the morning after his arrest, had a black eye and some blood on his shirt collar, but when asked what happened to him said "I don't know," and did not say he had been struck by anyone.

From this resume of the testimony that was offered, it is clear that if it is viewed in the light most favorable to defendants, it would be impossible to say that reasonable minds could not differ, but must find in favor of the plaintiff. Viewed in that manner, there could not possibly be a verdict for the plaintiff, for there would not even be any showing that he was assaulted.

However, the plaintiff claims that most, if not all of the affirmative showing of the defendants is incompetent. The plaintiff's theory is that, as the record shows, subsequent to his being taken to the police station, he was charged in the Juvenile Court of Huron County, Ohio, with acting in a manner tending to cause the delinquency of a minor; that the affidavit was signed by the defendant DeWalt; that no other charges of any kind were preferred against him; and that he was afterwards acquitted and discharged of this offense by the Court of Appeals, by a judgment which is now final. By reason of these circumstances, the plaintiff claims that his alleged arrest was void ab initio; that the defendant had no right to use any force whatever upon him, or to place him in the jail cell; and that consequently, even accepting defendant's testimony that he was not struck, but was injured by reason of falling when placed in the cell, he is entitled to judgment in his favor.

In support of this contention, which, as already pointed out, plaintiff has advanced consistently by motions, demurrers to the pleadings, and by timely objections and motions during the course of the trial, the plaintiff cites the following authorities.

Fess instruction to jury. Sections 51.2, 51.3, 51.4, 51.7, 51.10.

**Leger v. Warren, 62 Oh St 500, Syllabus 2, Page 506.**

**Bock v. Cincinnati, 43 Oh Ap 257, Syllabus 4 & 5.**

Tracy v. Coffey, 8 O. C. C. N. S. 88, Syllabus 3, Page 91, 92 .

**State v. Lewis, 50 Oh St 179, Syllabus; Pages 185, 186, 189.**

**Pletcher v. Younker, 44 Oh Ap 80, Pages 84 & 85.**

Tending to cause delinquency of a minor is only a misdemeanor. **Sec. 1639-45 GC.**

**25 O. Jur., Page 947.**

Province of court and jury as to existence of probable cause for arrest. Malicious Prosecution, Section 74; Cincinnati v. Wennes, 25 O. C. C. N. S. 321; 37 O. C. C. 408.

**23 O. Jur. Judgments, Sections 72, 73 & 74, Pages 578, 579.**

**C. & S. B. Telephone Co. v. Cincinnati, 84 Oh Ap 521.**

This court has carefully examined these authorities, and found most of them entirely distinguishable from the present situation.

The cited paragraphs from Judge Fess's "Ohio Instructions

to Juries" are instructions in a case of false imprisonment, as clearly appears from the Chapter heading and Section 51.1.

Section 51.3 provides a very concise statement of the two statutes of Ohio dealing with the right to arrest, and is to that extent applicable to the present case, but standing alone, as it must here, it does not support the plaintiff's contention.

None of the other sections cited are helpful in resolving the questions in this case, which is not a case for false imprisonment, but for assault and battery.

**Leger v. Warren, 62 Oh St 500,** was a case in which the plaintiff was arrested, held in prison for more than five days, and finally released, but no warrant for his arrest was ever obtained, and no charges were ever filed against him. It is clear from this statement that the case is in no way applicable to the situation here.

**Bock v. Cincinnati** and **Tapp v. Cincinnati, 43 Oh Ap 257** are criminal cases, in which the defendants were arrested on suspicion and searched, and then convicted upon the evidence revealed by the searches. They were discharged, because the court held that there was not probable cause sufficient to justify the arrest.

The present case very definitely presents the question of probable cause, but the facts are so remote from the facts of the present case that the **Bock** and **Tapp** cases (**43 Oh Ap 257**) are in no way helpful in reaching a conclusion as to whether there was probable cause for the plaintiff's arrest.

The case of Tracy v. Coffey 8 O. C. C. N. S. 88 comes closer than any of the authorities cited by plaintiff to the present case, but it does not appear very helpful to the plaintiff's contentions. In that case, which again was one for false imprisonment, the defendant arrested the plaintiff without a warrant. The plaintiff resisted, and was locked up by the defendant, and later charged with resisting an officer, from which charge he was, apparently, subsequently discharged.

The Court holds that a police officer who has reasonable ground for believing a felony has been committed may arrest a suspected person without warrant (Syl. 1); that if the suspect refuses to submit to arrest and compels the officers to use force, he is guilty of resisting an officer (Syl. 2); and in an action for false imprisonment the burden is on the arresting officers to show that such a state of facts existed as justified him in making such arrest (Syl. 3). Under this holding, the evidence of the circumstances leading up to plaintiff's arrest and imprisonment would be competent and material, and if therefrom it could be found that the defendants had reasonable grounds to believe a felony had been committed, they

would have had a right to arrest plaintiff, and he would have had no right to resist them. This is, of course, diametrically opposed to plaintiff's contentions.

**State v. Lewis, 50 Oh St 179** is the leading case on the subject of arrest. In that case, defendant, a village marshal, was indicted for second degree murder for causing the death of one Edward Elliott, in the course of an attempt to arrest the latter for commission of a misdemeanor. The defendant had no warrant, and the misdemeanor had not been committed in his presence. The court holds that the officer had no authority in law to arrest the decedent without a warrant.

With this general statement of law there can be no quarrel, but as applied to the present situation it does not help the plaintiff, for the factual situation here, as shown by the evidence, could be taken to show the plaintiff was committing a misdemeanor in the presence of the defendant DeWalt, to wit, a violation of §13194 GC, "Being Found Intoxicated" and that both defendants had reasonable ground for believing that plaintiff had committed a felony, by reason of violating §12423-1 GC, "Assault Upon a Child Under Sixteen Years," to say nothing, for fear of getting into a vicious circle, of violating, in the presence of the defendants, §12858 GC "Resisting Or Abusing An Officer" (See Tracy v. Coffey, 8 O. C. C. N. S. 88, Syl 2, Supra).

The case of **Pletcher v. Younker, 44 Oh Ap 80,** is not helpful here, as the facts are too remote from those of the present case. The action was one for assault and battery, in which the defendant struck the plaintiff with a large club, seriously injuring him. The case holds that where the defendant pleads self-defense, he is liable if he used an excessive degree of force, even though the situation appeared to him to warrant the degree of force used by him. However, assuming that the rule stated is applicable to the present case, the court cannot say that viewing the evidence in the light most favorable to the defendants, reasonable minds could not differ, but must find that the force used by the defendants was unreasonable and disproportionate to the situation.

The quotation from **25 O. Jur. 947** and **948 (Malicious Prosecution, Sec. 74)** is again not particularly applicable to the questions presented on this motion, being a mere general statement as to the function of the court and the jury as to the existence or want of probable cause in an action for malicious prosecution.

The case of Railway v. Winnes 25 O. C. C. N. S. 321; 37 O. C. C. N. S. 321; 37 O. C. C. 408, is another action for malicious

prosecution. No facts are stated in the opinion. It is interesting to note the language of the court at the bottom of page 322 of the opinion.

"The guilt or innocence of Winnes is in no wise involved in this controversy. It is only a question of information in possession of Woodward or of the Company at the time of the arrest, and whether he acted thereon as would any reasonable, prudent man."

The court then goes on to hold that probable cause is a mixed question of law and fact, which must be submitted to the jury under proper instructions.

The citation of **23 O. Jur. 578, Judgments, Sections 72, 73** and **78**, is not applicable to the particular problem involved here. These sections merely dismiss the general rules concerning motions for judgment notwithstanding the verdict.

The case of **C. & S. B. Telephone Co. v. Cincinnati, 84 Oh Ap, 521** is concerned only with the question of a motion for judgment notwithstanding the verdict. The second syllabus lays down the same rule as that in **Wilkeson, Admr., v. Erskine & Son, Inc., 145 Oh St 218** (Supra), and requires no further comment here.

It is the opinion of this court that the position of the plaintiff with respect to the defensive matters alleged and proved by the defendants is not correct. The validity of the defense that plaintiff was lawfully arrested, resisted arrest, and was injured when the defendants overcame his resistance must be determined in the light of the situation that was presented on January 1, 1951, and is not affected by the subsequent proceedings. Railway Co. v. Winnes, 25 O. C. C. N. S. 321; 37 O. C. C. 408, (Supra).

Conceding that acting in a manner tending to cause the delinquency of a minor is only a misdemeanor (§1639-45 GC), and that neither of the defendants were present when the plaintiff committed the acts alleged to have constituted this offense, it is still clear, if the evidence be viewed in the light most favorable to the defendants, that the plaintiff was, at the time of his arrest and incarceration, drunk. It is equally clear, upon this same basis, that the defendants had reasonable cause to believe that a felony, to-wit, a violation of §12423-1 GC, had been committed by the plaintiff.

The fact that no charge of violating either of these statutes was afterwards laid against the plaintiff, and that he was afterwards acquitted of the charge which was laid against him, is immaterial.

"If the circumstances of the case are such as to raise a

strong suspicion in the mind of the officer that a person has committed an offense against the law * * * and if the circumstances were such as should reasonably warrant an officer, acting as an ordinarily careful, prudent officer should under the circumstances, in so believing, so that there would exist probable cause for such action, then such officer would not be liable for the arrest or detention of one without a warrant and without an offense being committed in his presence, although it afterwards turns out that the party is innocent. * * *" Rudy v. Deitrich, 7 O. N. P. 620 at 622.

"The acquittal is not sufficient to show want of probable cause, because the guilt or innocence of the accused is not the equivalent of the want of probable cause. * * *" Britten v. Granger 13 O. C. C. 281 at 285; 7 O. C. D. 182.

"A person who sits down and deliberately makes a charge against another, is required to look into all the facts that exist in his mind, to some extent, * * * but * * * if the police officer arrested upon view, he cannot proceed in the examination of the facts that appeared in his mind at the time he makes the arrest, but must proceed hurriedly, without investigation, or nine times out ten he would lose the prisoner, * * * even where facts are brought to the notice of the person who institutes the prosecution, that person is acting under more or less excitement, and should not be held rigidly to the rule that would govern people who sit down and deliberately think about the matter after it is all over. * * *" Ibid., page 287.

"The point is made by defense that unless the officer has absolute knowledge that an offense is being committed against the laws of the State, he has no right to arrest without a warrant for a misdemeanor. This claim is not tenable. If the person arrested is, as a matter of fact, in the act of committing such offense, at the time of the arrest, and the officer has information or knowledge which induces him to reasonably believe, and at the time of the arrest he does believe that such offense is being committed, and the arrest is made on that account, this is sufficient." **Ballard v. State, 43 Oh St 340.** and see also State v. Pate 7 O. N. P. 543 at 545; 5 O. D. (N. P.) 732.

For the foregoing reasons, it appears to this court that the plaintiff's contention that by reason of his acquittal, his arrest became illegal ab initio ·is not correct. The question is only whether plaintiff's arrest was lawful or unlawful, and if it was the former, whether he resisted, and suffered his injuries as the result of the defendants attempting, with no more force than was reasonably necessary to overcome plaintiff's resistance. These questions are matters of fact, and

viewing the evidence in the light most favorable to the defendants, this court cannot say that reasonable minds could not differ, but must find these facts against the defendants. The plaintiff's motion for judgment notwithstanding the verdict is therefore overruled. An entry may be prepared accordingly.